**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES EDWARD BROWN,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-2612** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **CAMP HILL,** *et al.*, | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

**I.    Introduction**

Mr. Brown, an inmate formerly housed at the Dallas State Correctional Institution (SCI-Dallas), in Dallas, Pennsylvania, brings this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983.  Mr. Brown alleges that he was transferred to SCI-Smithfield in retaliation for filing grievances and letters challenging his conditions of confinement.  The following Pennsylvania Department of Corrections (DOC) employees are named as defendants: William D. Sprenkle, Mardiann I. Vincent, Tanya Brandt, Superintendent Michael Klopotoski, Vincent Mooney, Jerome Walsh, Robin Lucas, Norm Demming, Galen Miller, Peter Cwalina, Daniell Zielen, Lori Lyons and Mike Truchon.

Defendants have filed a motion to dismiss based on Mr. Brown's failure to: (1) allege the personal involvement of the supervisory defendants; (2) set forth a proper retaliation claim; and (3) file his action within the applicable statute of limitations.  (Doc. 26.)  Also pending is Mr. Brown's motion for "equitable tolling."  He asks for a ninety day stay of these

proceedings so he may complete his administrative remedies as to the claims raised in the Complaint. (Doc. 33.)

For the reasons that follow, the DOC defendants' motion to dismiss will be granted in part and denied in part. Mr. Brown will be allowed to file an amended complaint. Mr. Brown's motion for "equitable tolling" will be denied.

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss an action, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The court does not consider whether the plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. However,

mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).

The requirement of making factual allegations extends to averments of conspiracy. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009)(per curiam); *see also Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 175 (3d Cir. 2007)(nonprecedential)(a conspiracy claim cannot proceed merely upon the conclusory averment that a conspiracy took place but rather requires factual averments that would support the inference that the defendants engaged in concerted or joint action). "'This requirement is established where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible.'" *Id.* (quoting *Lynn v. Christner*, 184 Fed. Appx. 180, 185 (3d Cir. 2006)(per curiam)(nonprecedential)).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and

evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In deciding a motion to dismiss, the court should consider the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196. The court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 - 30 (3d Cir. 1997)).

III.   **Factual Background**[1]

As of December 16, 2008, Mr. Brown was incarcerated at SCI-Dallas for twenty-eight years. (Doc. 1, Comp., ECF p. 7.) During this time he filed at least one lawsuit, numerous grievances and letters to prison officials and others complaining about his conditions of confinement at SCI-Dallas. (*Id*.)

---

[1] As required on a motion to dismiss, the court accepts all factual allegations as true, and construes the Complaint in the light most favorable to the plaintiff. *See Kaymark v. Bank of America, N.A.,* 783 F.3d 168, 174 (3d Cir. 2015).

On December 15, 2008, Mr. Brown enjoyed a visit with his family from the Philadelphia area. (*Id*., ECF p. 17.) The scheduled visit was to last several hours. His family purchased over fifty dollars worth of food from the institution vending machines to share during the visit. (*Id*., ECF pp. 17 - 18.) After only an hour the visit was terminated because Mr. Brown was required to pack his property for transfer to another facility the next day. (*Id*.) The following day Mr. Brown was transferred to SCI-Smithfield. (*Id*., ECF p. 7.)

Mr. Brown's inmate account funds were not accessible to him at SCI-Smithfield until January 29, 2009. (*Id*., ECF p. 18.) SCI-Smithfield officials denied him a razor during this time. He could not watch cable tv due to lack of access to his prison funds. He paid approximately forty dollars to have his extra personal property shipped from SCI-Dallas to SCI-Smithfield. Additionally, although he had just paid his annual SCI-Dallas Lifer's Association membership fee of ten dollars, he would not be present at SCI-Dallas to enjoy the benefits of that membership, including the group's annual picnic. (*Id*.) SCI-Smithfield does not hold such picnics. (*Id*.) Due to his transfer, Mr. Brown no longer enjoys access to the law library five days a week. (*Id*., ECF p. 19.) Finally, Mr. Brown was given a substantially lower paying job at SCI-Smithfield than the one he held at SCI-Dallas. (*Id*., ECF p. 18.)

On February 26, 2009, Samuel Popovich, Staff Assistant to Secretary Beard advised Mr. Brown via letter that:

> Your institution was contacted requesting a Z-coded inmate that displays "positive" adjustment to "swap" with another inmate from SCI-Smithfield. Deputy Superintendent Vincent Mooney stated that you have been at SCI-Dallas for a long period of

-5-

>     time, twenty-eighty (28) years, and could benefit from a change
>     of scenery.

(*Id*., ECF pp. 4 - 5.)  Mr. Brown contends that his transfer was accomplished outside of the DOC's routine practice concerning transfers.  No "Vote Sheet" was compiled regarding his transfer to SCI-Smithfield.  The rationale for his transfer was "Z-coded Swap with SMI."  (*Id*., ECF p. 12.)  His transfer was requested by Counselor Lori Lyons and approved of by Administrative Assistant Tanya Brandt (Office of Population Management) and Executive Deputy Secretary William Sprenkle.  (*Id*., ECF pp. 12 - 13.)  Mr. Brown's Unit Team, Deputy Superintendents Mooney and Walsh, and Facility Manager Klopotoski did not initiate Mr. Brown's permanent transfer to SCI-Smithfield.  (*Id*., ECF p. 16.)  The Unit Team, Mooney, Walsh and Klopotoski "never" voted to transfer Mr. Brown to SCI-Smithfield.  (*Id*.)

Mr. Brown had no behavioral, security, mental or physical issues that would have necessitated his transfer from SCI-Dallas.  (*Id*., ECF p. 19 - 20.)  SCI-Smithfield "could have requested a z-coded inmate from SCI-Huntingdon several blocks away from SCI-Smithfield."  (*Id*., ECF p. 15.)  "Out of all of the other twenty-four (24) State prisons that house fifty-two thousand (52,000) inmates and two thousand (2,000) at SCI-Dallas that 'Plaintiff was the chosen one' to be transferred."  (*Id.*)  Mr. Brown believes defendants had no legitimate penological reasons for transferring him after twenty-eight years at SCI-Dallas.  (*Id*., ECF p. 19.)

Mr. Brown accuses defendants (William Sprenkle, Mardiann Vincent, Tanya Brandt, Superintendent Klopotoski, Vincent Mooney, Jerome Walsh, Robin Lucas, Norm Demming, Galen Miller, Peter Cwalina, Daniel Zielen, Lori Lyons and Mike Truchon) of conspiring to

-6-

transfer him in retaliation for his filing of lawsuits, grievances and letters complaining of his conditions of confinement.  (*Id*., ECF p. 5.)  These allegations span 1993 to 2008, and cover a range of topics: heating problems; a broken toilet; a broken typewriter; the improper handling of grievances; and over-inflated commissary prices.  (*Id*., ECF pp. 25 - 32.)

On December 30, 2008, Mr. Brown filed a grievance with SCI-Dallas officials concerning his "conspiracy retaliatory transfer."  (*Id*., ECF p. 16.)  He gave SCI-Smithfield prison authorities his Complaint for mailing on December 17, 2010.  (Doc. 1, ECF p. 44.)

**IV.    Discussion**

   **A.    Statute of Limitations**

There is no specific statute of limitations for actions filed pursuant to 42 U.S.C. § 1983.  *Pearson v. Sec'y Dept. of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015).  However, the Supreme Court has held that the statute of limitations for a § 1983 claim is the state statute of limitations for personal injury.  *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 1094, 166 L.Ed.2d 973; *see also Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 859 - 60 (3d Cir. 2014).  Since Pennsylvania has a two year statute of limitations for personal injury actions, the statute of limitations applicable to claims brought under § 1983 in Pennsylvania is two years.  *See* 42 PA. CONS. STAT. § 5524(7) (2014).  The limitations period begins to run "'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoted cases omitted) (brackets added).  The statute of limitations is tolled while an

inmate plaintiff exhausts his administrative remedies. *See Pearson*, 775 F.3d at 603 ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.").

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e(a), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in the procedural default of a claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action. *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006)(nonprecedential)(citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002))("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court.") Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a requirement for the prisoner-plaintiff. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (holding that failure to exhaust is an affirmative defense and finding that the district court erred in imposing a heightened pleading standard requiring prisoner to not only plead, but also prove, exhaustion in the complaint).

With these principles in mind, the court will deny the defendants' motion to dismiss the Complaint on the basis of the statute of limitations.

Mr. Brown filed this action on December 17, 2010.[2] Without considering the tolling effect any grievance filed by Mr. Brown concerning his alleged retaliatory transfer may have on this issue, any cause of action that accrued prior to December 17, 2008, is barred by the applicable statute of limitations. Applying this statutory bar, it appears that Mr. Brown's action is filed one day beyond the limitations period.

Next, the court addresses the issue of whether Mr. Brown is entitled to any tolling of the limitations period due to his filing of a grievance concerning his alleged retaliatory transfer.[3] Pursuant to the DOC Inmate Grievance System, DC-ADM 804, an inmate has fifteen working days after the event upon which the claim is based to file a grievance. *See* DC-ADM 804, *Inmate Grievance System Procedures Manual, available at* http://www.cor.pa.gov/. Mr. Brown states he filed his grievance with the officials at SCI-Dallas on December 30, 2008. What happened to that grievance, and whether it was properly handled by the DOC, or properly exhausted by Mr. Brown, is unclear at this point. However, what is clear is that Mr. Brown did file his grievance within fifteen working days of his transfer to SCI-Smithfield. Thus, his limitations period is tolled at least during this time he was permitted to file, and did file, his grievance and any allowable grievance appeals.

---

[2] The Complaint was docketed on December 22, 2010, but Mr. Brown affirms placing it in the prison mail system on December 17, 2010. Accordingly, under the prison mailbox rule, the court considers December 17, 2010, as the filing date. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003).

[3] It is important to note that defendants do not argue that Mr. Brown has failed to exhaust his administrative remedies as to this claim. Thus the court need not examine whether Mr. Brown has properly exhausted his administrative remedies as to his claim. At this time, the court examines the filing of a related grievance only for the purpose of resolving the statute of limitations issue. In doing so, the court will not address whether Mr. Brown properly, or improperly, exhausted his administrative remedies related to claims pursued in this action as defendants specifically deny raising such a challenge. *See* Doc. 56, ECF p. 4.

Based on the facts in the Complaint, taken in the light most favorable to Mr. Brown, Mr. Brown's limitations period was sufficiently extended due to the filing of his December 30, 2008 grievance to make his December 17, 2010, Complaint concerning his December 16, 2008, retaliatory transfer timely filed.

### B. Conspiracy

"In order to prevail on a conspiracy claim under Section 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Watson v. Sec'y Pa. Dept. of Corr.*, 436 Fed.Appx. 131, 137 (3d Cir. 2011) (internal quotation marks omitted). A plaintiff must plead an actual agreement between the parties. (*Id.*) Because the "linchpin for conspiracy is agreement, concerted action without more cannot suffice to state a conspiracy claim." (*Id.*)

"As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (nonprecedential) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir.1999)). A conspiracy claim requires more than mere speculation as to an agreement. Plaintiff must provide "specific allegations of 'combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000); *see also Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014) (nonprecedential).

Although Mr. Brown claims that all of the DOC defendants conspired to retaliate against him by transferring him to SCI-Smithfield due to his filing of grievances and letters, he does not state a cognizable conspiracy claim against any of them as he fails to provide any particularized allegations as to the conspiracy. The factual allegations of Mr. Brown's Complaint do not support a plan or agreement of the defendants to conspire or engage in a plot to violate his civil rights. Rather, he simply recites his various grievances and letter and those who were involved in each. Therefore, pursuant to 28 U.S.C. § 1915, Mr. Brown's conspiracy claim against the defendants will be dismissed without prejudice and with leave to amend.

### C. Personal Involvement of Supervisory Defendants

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States. *Rehberg v. Paulk*, ___ U.S. ___, ___, 132 S.Ct. 1497, 1501, 182 L.Ed.2d 593 (2012); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).

To establish liability for the deprivation of a constitutional right, an individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated based on the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government

official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)(noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Likewise, a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a complaint or grievance, does not establish their personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207 - 08 (finding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (nonprecedential) (finding "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement" requirement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (nonprecedential) ( "The District Court properly dismissed these [supervisory] defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v.*

*Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (nonprecedential) (failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).

Defendants seek to dismiss the "supervisory" defendants named in the Complaint on the basis of lack of personal involvement. They identify the supervisory defendants as Sprenkle, Vincent, Brandt, Klopotoski, Mooney and Walsh. (Doc. 27, ECF p. 5.) Mr. Brown argues that he named these defendants for reasons other than their role in responding to his grievances or letters as defendants claim. (Doc. 32, ECF pp. 2 - 3.) Based on a review of the Complaint, the court will deny the defendants' motion to dismiss the Complaint against supervisory defendants Sprenkle, Brandt, and Lyons as Mr. Brown specifically identifies these defendants as being involved in his transfer. However, the defendants' motion will be granted with respect to the other defendants as Mr. Brown has failed to identify how each participated in, or directed, his transfer in retaliation for his filing of grievances, letters or lawsuits.

Mr. Brown will be given the opportunity to file an amended complaint as to the remaining defendants involvement in the alleged conspiracy to transfer him in retaliation for exercising his First Amendment rights.

### D. Retaliatory Transfer

Due to the inherent issues of security within a correctional institution, prisoners do not have a constitutionally protected right to remain at a particular facility, or housing unit within a facility. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983). However, moving or transferring an inmate in retaliation for exercising his constitutional rights itself is a violation of the Constitution. *See White v. Napolean*, 897 F.2d 103, 111 - 12 (3d Cir. 1990); *see also Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (holding that the relevant question in a retaliation case is not whether Plaintiff had a "protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right.").

"Retaliation against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian*, 696 F.3d at 376. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prisoner officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3e 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted); *see also Bullock v. Buck*, 2015 WL 1951895, at *2 (3d Cir. 2015). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate he would have taken the same action even if the plaintiff had not engaged in the protected activity. *See Rauser*, 341 F.3d at 334.

Defendants argue that even if it is assumed for the purpose of their motion to dismiss that Mr. Brown was engaged in constitutionally protected activity, *i.e.,* the exercise

of his First Amendment rights when filing grievances, complaint letters, and lawsuits concerning his conditions of confinement, he fails to demonstrate that he suffered an adverse action as a result of his transfer. They argue that even after his transfer Mr. Brown continued to file grievances, letters and lawsuits and thus cannot demonstrate that his transfer caused any adverse consequence sufficient to "deter a person of ordinary firmness" from exercising his First Amendment rights. (Doc. 27, ECF p. 8.) Mr. Brown identifies the negative consequences of his transfer (loss of an extended family visit, financial losses associated with Lifer's Association dues, loss of lucrative employment, and shipping costs of his personal property) as demonstrative of the adverse impact he suffered as a result of the transfer. He argues these adverse actions are sufficiently serious to deter a person of ordinary firmness from exercising his constitutional rights. (Doc. 32, ECF pp. 4 - 14.) The Third Circuit Court of Appeals has held that a transfer "to a distant prison where [an inmate's] family could not visit him regularly," and financial penalties could satisfy the adverse consequences requirement to set forth a retaliation claim. *Rauser*, 241 F.3d 330. Additionally, while Mr. Brown asserts a tenuous causal connection between his grievances and letters and his transfer, and perhaps refutable by defendants, at the motion to dismiss stage where the court must accept the allegations of the complaint as true, Mr. Brown's allegations satisfy the pleading requirements for a First Amendment retaliation claim against defendants Lyons, Brandt and Sprenkle as they are alleged to have recommended and/or approved his transfer. *See Fantone v. Lantini*, 780 F.3d 184, 194 (3d Cir. 2015)(remanding district court's dismissal of retaliation claim on motion to dismiss). However, for the reasons cited earlier as to Mr. Brown's failure to

-15-

allege the personal involvement of the other defendants, he will be granted leave to amend this claim to assert.

### E. Mr. Brown's Motion for Equitable Tolling

Mr. Brown has filed a motion seeking ninety "days of the equitable tolling doctrine to exhaust his prison administrative remedies on the prison Grievance System DC-ADM 804." (Doc. 33.) In his motion he recounts how his December 30, 2008 grievance concerning his transfer was mishandled by various DOC defendants. At this point in time, defendants are not seeking to dismiss his Complaint on the basis that he failed to exhaust his administrative remedies. Should defendants raise that affirmative defense, it would be their burden to prove Mr. Brown's non-compliance with the administrative remedy process. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). At that time Mr. Brown could present argument as to defendants' interference with his ability to exhaust his administrative remedies. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, until challenged, Mr. Brown need not affirmatively plead his exhaustion of his administrative remedies. *See Ray,* 285 F.3d at 295. Moreover, the court cannot grant Mr. Brown the relief he requests as he must exhaust his administrative remedies before filing his a civil-rights action. *See Oriakhi,* 165 F. App'x at 993. At best, if he has failed to exhaust his administrative remedies prior to bringing this action, and defendants raise this affirmative defense, Mr. Brown may always argue that defendants somehow interfered with his administrative remedies, and if successful, Mr. Brown's failure to exhaust his administrative

remedies could be excused. *See Brown*, 312 F.3d at 110. Accordingly, Mr. Brown's motion for equitable tolling will be denied.

### F. Leave to Amend

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). In this case, it may be possible that Mr. Brown could remedy the deficiencies of his conspiracy and retaliation claims by amendment. If desired, Plaintiff may file an amended complaint and should provide more facts about these claims if he elects to pursue them.

Mr. Brown will be granted twenty-one days to file an amended complaint. If he decides to file an amended complaint, he is advised that it must contain the same docket number as the instant action and should be labeled "Amended Complaint." In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Consequently, all causes of action alleged in the first amended complaint which are not alleged in the second amended complaint are waived. Therefore, if Mr. Brown seeks to continue with his retaliation claim against defendants Lyons, Brandt and Sprenkle he must include these claims and supporting allegations in his amended complaint.

Plaintiff is also advised that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in an individually numbered

paragraph in short, concise and simple statements. *Id.* The allegations should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. He also shall specify the relief he seeks with regard to each claim. Plaintiffs' failure to file an appropriate amended complaint within the required time will result in this action proceeding only on Mr. Brown's retaliation claims against Lyons, Brandt and Sprenkle.

      An appropriate order follows.

                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**

**Date: September 25, 2015**