# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES EDWARD BROWN, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. 3:10-CV-2612 |
| v. : | |
| : | (Judge Caputo) |
| WILLIAM D. SPRENKLE*, et al.,* : | |
| : | |
| Defendants. : | |

### M E M O R A N D U M

In December 2010, Plaintiff Charles Edward Brown, a prisoner in the custody of the Pennsylvania Department of Corrections (DOC), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Mr. Brown claims various DOC employees (William D. Sprenkle, Tanya Brandt, Superintendent Michael Klopotoski; Vincent Mooney, Jerome Walsh and Lori Lyons) transferred him to a different facility in retaliation for his filing of institutional grievances. (ECF No. 66, Am. Compl.) Presently before the Court are cross motions for summary judgment limited to the issue of Mr. Brown's exhaustion of Grievance 259990. (ECF Nos. 137 and 141).

For the reasons set forth below, the Court will grant Defendants' second motion for summary judgment and deny Plaintiff's motion for summary judgment. All other pending motions, except for Plaintiff's motion to file a response to Defendants' summary judgment motion (ECF No. 148), will be denied as moot. The Court will accept Mr. Brown's opposition materials as timely filed.

**I.      Summary Judgment Standard of Review**

Summary judgment is appropriate if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019); Fed R. Civ. P. 56(a).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015); Fed. R. Civ. P. 56(c). If this burden is met, the nonmoving party "may not rest on speculation and conjecture in opposing a summary judgment motion." *Ramara, Inc. v. Westfied Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016). Rather, the nonmovant must demonstrate, from more than the pleadings alone, the existence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A dispute of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (citing *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)). "[A] fact is only material if it might affect the outcome of the suit under the governing [substantive] law." *Forrest,* 930 F.3d at 105 (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,* 470 F.3d 535, 538 (3d Cir. 2006.))

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Baloga*, 927 F.3d at 752 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Pearson v. Prison Health Serv.,* 850 F.3d 526, 533-34 (3d Cir. 2017)). Credibility determinations are

the province of the factfinder. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017).

II.     **Relevant Procedural History**

Mr. Brown initiated this action on December 17, 2010. (ECF No. 1.) The DOC Defendants then filed a motion to dismiss the Complaint. The Court granted Defendants' motion in part and denied it in part, allowing Mr. Brown to file an amended complaint. *Brown v. Camp Hill*, No. 3:CV-10-2612, 2015 WL 5675575 (M.D. Pa. Sept. 25, 2015).

On October 9, 2015, Mr. Brown filed an Amended Complaint. (ECF No. 66.) Defendants again sought dismissal of the action. (ECF No. 68.) On September 29, 2016, the Court denied Defendants' motion finding Mr. Brown had plead a viable retaliation claim. *Brown v. Camp Hill*, No. 3:CV-10-2612, 2016 WL 5461986 (M.D. Pa. Sept. 29, 2016).

Shortly after Defendants filed an Answer to the Amended Complaint (ECF No. 80) they filed a motion for summary judgment based on Mr. Brown's failure to exhaust his administrative remedies with respect to his retaliatory transfer claim. Specifically, Defendants alleged Mr. Brown failed to properly exhaust Grievance 282036. (ECF No. 81.) On September 5, 2017, the Court denied the motion finding that while Grievance 282036 was not properly exhausted, the record demonstrated Mr. Brown had filed another administrative remedy, Grievance 259990, concerning his alleged retaliatory transfer which Defendants had not challenged. *Brown v. Camp Hill*, 3:CV-No. 10-2612, 2017 WL 3872399 (M.D. Pa. Sept. 5, 2017). Defendants then sought leave to challenge Mr. Brown's exhaustion of Grievance 259990. (ECF No. 126.) The Court granted Defendants' request on August 16, 2018. (ECF No. 134.)

On November 2, 2018, Defendants filed a second motion for summary judgment as to Mr. Brown's failure to exhaust Grievance 259990. (ECF No. 137.) Defendants filed a statement of material facts (ECF No. 138), supporting brief (ECF No. 139) and exhibits (ECF No. 140). On November 2, 2018, in lieu of a response, Mr. Brown initially filed his own motion for summary judgment asserting that Defendants impeded his ability to complete the administrative remedy process with respect to Grievance 259990. (ECF No. 141.) He also filed a statement of material facts, supporting brief and exhibits. (ECF Nos. 142, 143, 144 and 145.) Mr. Brown then sought an enlargement of time to respond to Defendants' second motion for summary judgment. (ECF No. 148.) Defendants filed a timely response to Mr. Brown's motion for summary judgment which included a response to his statement of material facts and opposition brief. (ECF Nos. 149 and 150.) On December 7, 2018, Mr. Brown filed exhibits and a brief in opposition to Defendants' motion for summary judgment. However, he did not address Defendants' statement of material facts. (ECF No. 156.)

In the interim, Mr. Brown filed multiple motions for sanctions. (ECF Nos. 146, 152, 158 and 160.) He seeks sanctions against defense counsel for his failing to mark their litigation correspondence as "legal mail" under the DOC's new mailing system which results in his delayed receipt of such mailings,[1] and because of his dissatisfaction with Defendants' response to his request for production of documents.[2] He also sought

---

[1] Mr. Brown does not identify the basis of his alleged privileged or confidential relationship with defense counsel, a prerequisite to having correspondence identified as "legal mail" under the DOC's mail policy. Moreover, he does not suggest how defense counsel's actions prejudiced him in this matter or prevented him from seeking an enlargement of time from this Court to respond to any Court ordered or pleading deadlines.

[2] On August 20, 2018, the Court directed Defendants to respond to ¶¶ 1-5 of Mr. Brown's March 18, 2011-request for production of documents. (ECF No. 135.) Defendants then provided Mr. Brown with an updated response to his discovery. (ECF No. 151-1.) To the extent Mr. Brown is dissatisfied with the Defendants' response because it does not provide "all of the Defendants[']

sanctions against Chief Grievance Coordinator Dorina Varner for misrepresenting to the Court that Grievance 282036 was the "sole" administrative remedy he filed concerning his retaliatory transfer.[3]

### III. Statement of Undisputed Facts[4]

Plaintiff Charles E. Brown is presently housed at the Smithfield State Correctional Institution (SCI-Smithfield), in Huntingdon, Pennsylvania. (ECF No. 138, Defs.' Statement of Material Facts, ¶ 1; ECF No. 142, Pl.'s Statement of Material Facts, ¶ 1; and ECF No. 149, Defs.' Answer to Pl.'s Statement of Material Facts.) The following DOC employees are named as defendants: William Sprenkle, Lori Lyons, Tanya Brandt, Michael Klopotoski, Jerome Walsh and Vincent Mooney. (ECF No. 138 at ¶ 2; ECF No. 149 at ¶ 2 and ECF No. 149 at ¶ 2.) The sole issue presented in this action is whether Defendants transferred Mr. Brown from SCI-Dallas to SCI-Smithfield on December 16,

---

reasons and approval of his retaliatory transfer from SCI-Dallas to SCI-Smithfield" (ECF No. 147 at 4), Defendants are not required to create additional documents of formulate interrogatory-type responses to his request for production of documents. Nonetheless, if this matter were to proceed to trial, the Court would prevent Defendants from proffering documents responsive to Mr. Brown's request that they did not produce in discovery.

[3] The Court previously denied Mr. Brown's earlier motion for sanctions against defense counsel concerning this same issue. See ECF No. 136. Upon examination of Ms. Varner's declaration, the Court find's Mr. Brown's representation of her declaration to be inaccurate. See ECF No. 84-3, Declaration of Dorina Varner. She does not represent that Grievance 282036 is the sole grievance Plaintiff filed. Instead, she addresses the exhaustion of the grievance defense counsel asked her to examine.

[4] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." Pa. M.D. Local Rule 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issue of trial. See Id. Although familiar with the requirements of Local Rule 56.1, see ECF No. 142, Mr. Brown did not address Defendants' statement of undisputed facts. See ECF No. 141 – 145 and 156. Thus, Defendants' statement of material facts, were undisputed by the record, are accepted as true.

2008, in retaliation for his filing of grievances. (ECF No. 66, Am. Compl.) The parties have limited their summary judgment motions to the issue of Mr. Brown's exhaustion of Grievance 259990.

**A. DOC's Grievance Process**

The DOC's Administrative Directive DC-ADM 804 (DC-ADM 804) is known as the Inmate Grievance System. (ECF Nos. 140-1 and ECF No. 145 at 3 – 17.) It provides inmates with a multi-step administrative grievance appeal process to raise and resolve issues arising during the course of their incarceration. Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the events giving rise to the grievance occurred. The grievance must be filed within fifteen working days of the event upon which the grievance is based. If unsatisfied with the initial review of his grievance, the inmate may appeal the decision to the Facility Manager (Superintendent). If dissatisfied with the Facility Manager's response, the inmate may appeal that decision to final review by the Secretary's Office of Inmate Grievance Appeals (SOIGA).

Via the DOC's Inmate Handbook, the DOC provides inmates with notice of the Grievance System and the procedural and substantive requirements they must follow to properly exhaust their issue through the administrative remedy process. Extensions of the filing deadlines for grievances and inmate appeals are available where the inmate notifies the agency of the reason for the delay and it is determined that the delay was attributable to reasons unrelated to the inmate's actions; i.e., an inmate's transfer or delays with the mail delivery. (ECF Nos. 140-1 and ECF No. 145 at 3 – 17.)

### B. Consolidated Grievance 259990

On December 22, 2008, Mr. Brown notified SCI-Dallas' Grievance Coordinator, Ms. Lucas, of his intent to file a "late" grievance challenging his retaliatory transfer from SCI-Dallas to SCI-Smithfield. (ECF No. 140-2 at 1 – 2; ECF No. 145 at 19 – 20.) On January 19, 2009, Mr. Brown filed Grievance 259990 addressing Ms. Lucas' failure to process his December 30, 2008-grievance about his retaliatory transfer. He attached a copy of his unprocessed December 30, 2008-grievance, *inter alia*, as an exhibit to Grievance 259990. (ECF No. 140-2 at 3 – 6 and ECF No. 145 at 22 – 25.)

Plaintiff also wrote to Dorina Varner, the DOC's Chief Grievance Officer, concerning Ms. Lucas' failure to process his December 30, 2009 grievance. (ECF No. 140-2 at 7 – 8 and ECF No. 145 at 26 - 27.) Ms. Varner responded to Plaintiff on February 4, 2009. She advised Mr. Brown that Ms. Lucas received, and was processing, his January 2009-grievance concerning the alleged failure to process his December 30, 2008 transfer related grievance as Grievance 259990. (ECF No. 140-2 at 9 and ECF No. 145 at 29.) Ms. Varner also addressed Mr. Brown's inquiry as to the status of another unrelated grievance, Grievance 255532.

> [T]he initial response to Grievance No. 255532 was completed on January 28, 2009. If you have not already received a copy of the response, you should be receiving it shortly. If you do not receive a copy, you should contact the Facility Grievance Coordinator at SCI Dallas.

(ECF No. 140-2 at 9 and ECF No. 145 at 29.)

On February 13, 2009, Mr. Brown sent then Secretary Beard a letter requesting that Ms. Lucas process his December 30, 2008 grievance pertaining to his alleged retaliatory transfer. (ECF No. 140-2 at 10 and ECF No. 145 at 28.)

Ms. Lucas notified Mr. Brown via a February 18, 2009-memo that she requested, and was approved, a ten-day extension to further investigate and respond to the allegations of Grievance 259990. (ECF No. 140-2 at 11and ECF No. 145 at 31.) On February 23, 2009, Unit Manager Galen Miller, responded to Grievance 259990. (ECF No. 140-2 at 12.)

On February 25, 2009, Ms. Varner responded to Mr. Brown's February 13, 2009-letter to then Secretary Beard. (ECF No. 140-2 at 13 and ECF No. 145 at 30.)

> As you were informed in this office's Action Taken Notice dated February 4, 2009, this office was informed that institutional staff did not receive your December 30, 2008 grievance regarding your transfer. However, Ms. Lucas, the Facility Grievance Coordinator, received your grievance dated January 19, 2009 regarding your concerns that the December 30, 2008 grievance was not processed. Your January 19, 2009 grievance was received and processed as Grievance No. 259990 on February 3, 2008 and assigned to Mr. Demming. As Mr. Demming reviewed your January 19, 2009 grievance, it was discovered that a copy of your December 30, 2008 transfer grievance was attached to Grievance No. 259990. Mr. Demming then spoke to Ms. Lucas regarding the grievance. A determination was then made that the copy of your December 30, 2008 transfer-related grievance that you attached to your January 19, 2009 grievance would be assigned as Grievance No. 259990. Your December 30, 2008 transfer-related grievance and your January 19, 2009 grievance relating to the non-receipt of the December 30, 2008 grievance were combined. Ms. Lucas was attempting to address the main crux of your concerns which seemed to be your alleged retaliatory transfer. Grievance No. 259990 was then re-assigned to Mr. Miller to address the concerns regarding your transfer. On February 18, 2009, Mr. Lucas sent correspondence to you advising you that a ten-day extension was requested and approved for staff to investigate the concerns of Grievance No. 259990. According to institutional staff, an initial review response was completed on February 23, 2009.
>
> It should be noted that an actual DC-804 grievance packet dated December 30, 2008 was never received by the institution. It is also noted that institutional staff was not obligated to treat your copy of your December 30, 2008

- 8 -

> grievance as an actual grievance. However, although somewhat confusing, institutional staff took the above actions in an attempt to address your concerns regarding your transfer.

(ECF No. 140-2 at 13 and ECF No. 145 at 30)(emphasis in the original).

Mr. Brown did not pursue an appeal of Grievance 259990 to either the Facility Manager level or SOIGA. (ECF No. 138 at ¶ 26; ECF No. 140-3, Varner Decl., ¶ 23.)

## IV. Discussion

### A. Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act (PLRA) of 1996, Section 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). Exhaustion is "mandatory"; an inmate may not bring any action absent exhaustion of available administrative remedies. *Id.* at 524, 122 S.Ct. at 988. The idea is to eliminate unwarranted federal-court interference with the administration of prisons by affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." (*Id.*) "Proper exhaustion" is defined as "compliance with the agency's deadlines and other critical procedural rules…." *Id.* at 91, 126 S.Ct. at 2386; *see also Jones v. Bock*, 549 U.S. 199,

218, 127 S.Ct. 910, 923, 166 L.Ed.2d 798 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Thus, inmates who fail to fully, or timely, complete the prison's grievance process cannot satisfy the PLRA's exhaustion requirement and are prohibited from litigating the claim in federal court. *Woodford*, 548 U.S. at 83-84, 126 S.Ct. at 2382.

"The only limit to [the PLRA's] mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, \_\_\_\_\_ U.S. \_\_\_\_\_, \_\_\_\_\_, 136 S. Ct. 1850, 1862, 195 L.Ed.2d 117 (2016). If the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). The Supreme Court has explained that there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, \_\_\_\_\_ U.S. at \_\_\_\_\_, 136 S.Ct. at 1859. First, an administrative remedy will be deemed unavailable where the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates". (*Id.*) Second, a remedy is not available if the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use" and cannot be navigated by an ordinary prisoner. (*Id.*) Third, a remedy will be deemed unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at \_\_\_\_\_, 136 S.Ct. at 1858-60.

The Third Circuit Court of Appeals has found an inmate's administrative remedy "unavailable" where prison officials thwarted an inmate's exhaustion efforts by providing misleading filing instructions, *see Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002), and when

they "failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Supt. Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). However, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore*, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impeded grievance, prisoner failed to follow through on grievance). The Third Circuit Court of Appeals has also found that where prison officials deter an inmate from pursuing an administrative remedy by making "serious threats of substantial retaliation …. and bodily harm," the administrative remedy process is not "available." *Rinaldi v. United States,* 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Inmates are not required to plead and provide exhaustion in their complaint, rather a prisoner-plaintiff's failure to exhaust is an affirmative defense the defendants must plead and prove. *Jones*, 549 U.S. at 216, 127 S.Ct. at 921; *see also Small v. Camden Cty.*, 728 F.3d 265, 268-69 (3d Cir. 2013). Finally, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269. "[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id*. at 271.

**B. Analysis**

Defendants assert that Mr. Brown failed to exhaust his available administrative remedies with respect to Grievance 259990 because he did not appeal the Initial Review Response to final review as required by DC-ADM 804. (ECF No. 139.) Mr. Brown contends the DOC's administrative remedy process was unavailable to him because "SCI-Dallas prison officials withheld the Initial Review response from Plaintiff" and therefore he could not pursue an appeal. (ECF No. 142 at ¶ 34.)

This is not a situation where prison officials rendered their administrative remedy process unavailable by failing to timely (by its own procedural rules) to respond to Mr. Brown's grievance and then repeatedly ignored his follow-up requests for a decision on his grievance. It is undisputed that prison officials did not receive the original mailing of Mr. Brown's December 30, 2008-grievance. They received a copy of it on January 19, 2009 in connection with Mr. Brown's grievance concerning Ms. Lucas' alleged failure to process the December 30, 2008-grievance. Prison officials did not reject the December 30, 2008-grievance as untimely, instead they consolidated the matter, for consideration with Mr. Brown's complaint that against Ms. Lucas under Grievance 259990. SCI-Dallas officials formulated an Initial Review Response to Grievance February 23, 2009.

Contrary to Mr. Brown's assertion, Defendants did not play "hide & seek" with the Initial Review Response. (ECF No. 156 at 12.) While there is a dispute of fact as to whether Mr. Brown received a contemporaneous copy of the February 23, 2009 Initial Review Response, it is not a material dispute. Mr. Brown admits that "[o]n March 3, 2009, [he] received a response from Ms. Varner on behalf of Secretary Beard about Grievance December 30, 2008." (ECF No. 35 at 3 and ECF No. 156-2 at 11). In that response, Ms. Varner advises that "an initial review response [to Grievance 259990] was completed on

- 12 -

February 23, 2009." (ECF No. 140-2 at 13 and ECF No. 145 at 30.) Thus, at the latest, Mr. Brown learned of the Initial Review Response on March 3, 2009.

Aware of the Initial Review Response, Mr. Brown's has not supported his assertion that Defendants played "hide & seek" with it or withheld it from him thwarting his exhaustion efforts. (ECF No. 156 at 12.) Mr. Brown was not left on uncharted ground without recourse under the DOC's grievance policy if he failed to receive a copy of the February 23, 2009 Initial Review Response. Mr. Brown, who successfully demonstrated his knowledge of his options when he pursued the processing of his December 30, 2008-grievance, chose to ignore the same options when seeking to appeal the Initial Review Response to Grievance 259990. After March 3, 2009, Mr. Brown could have alerted SCI-Dallas officials that he would be filing a late appeal due to his lack of receipt of a copy of the grievance response. Alternatively, he could have contacted Ms. Lucas and requested an additional copy of the response.[5] Mr. Brown does not suggest he ever requested, or was denied, a copy of the initial review response from prison officials.[6] He also does not address why after learning of the response being filed, he did not seek an extension of time to file an appeal or a copy of the grievance response.

This is not a case where prison officials directly caused the inmate's procedural default of grievance. Mr. Brown provides no excuse, other than his lack of receipt of a physical copy of the Initial Review Response, to explain why did not pursue remedies available to him under the DOC's grievance policy. Once alerted to its existence, even

---

[5] A month earlier Ms. Varner recommended he do just that if he did not receive an Initial Review Response to Grievance 255532. *See* ECF No. 140-2 at 9 ("If you have not already received a copy of the response (to Grievance 255532), you should be receiving it shortly. If you do not receive a copy, you should contact the Facility Grievance Coordinator at SCI Dallas.")

[6] Mr. Brown states he did not receive a copy of the February 23, 2009, initial grievance response until he received it in connection with Defendants' first motion for summary judgment. (ECF No. 156-1 at 14.)

- 13 -

though he did not have a copy in hand, Mr. Brown cannot rest on his laurels and claim staff interference with his access to the grievance process. Mr. Brown inexplicitly failed to take any action on his own behalf to appeal the Initial Review Response of Grievance 259990 through the DOC's Inmate Grievance System following his March 3, 2009 notice of the existence.

It is undisputed that he failed to exhaust Grievance 259990 to final review. Prison officials responded to his grievance and Mr. Brown was aware that SCI-Dallas officials had completed an initial response to the grievance. Based on the record before the Court, Mr. Brown has not demonstrated the existence of a genuine issue of material fact to suggest prison officials prevented him from exhausting his administrative remedies with respect to Grievance 259990. Because Mr. Brown submits no competent summary judgment evidence to show that any of the three circumstances described by the Supreme Court are present in this case to the degree that "an administrative remedy, although officially on the books, is not capable of use to obtain relief," *Ross,* \_\_\_\_\_ U.S. at \_\_\_\_\_, 136 S.Ct at 1859, there is no basis to excuse his failure to exhaust his administrative remedies.

Based on the foregoing, the Defendants' second motion for summary judgment will be granted on the grounds that Mr. Brown failed to exhaust his available administrative remedies as to his retaliatory transfer claim. Accordingly, Mr. Brown's motion for summary judgment will be denied.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Dated: August 27, 2019**